C. C. RICHARDSON *v.* LUMBERMEN'S INSURANCE COMPANY

(No. 8971)

Submitted January 30, 1940. Decided February 20, 1940.

*Hugh G. Woods*, for plaintiff in error.
*Sanders & Day*, for defendant in error.

KENNA, JUDGE:

This action in assumpsit was brought in the Circuit Court of Mercer County by C. C. Richardson against Lumbermen's Insurance Company for the purpose of recovering under the theft clause of an automobile insurance policy in force at the time of the happenings recounted. The submission in the lower court was upon a stipulation of agreed facts, a jury being waived, and the plaintiff below was granted this writ upon a judgment *nil capiat.* From the agreed statement and exhibits filed with it and the notice, the averments of which are uncontradicted, the following facts appear:

The B. & B. Chevrolet Company doing business in Knoxville, Tennessee, on June 29, 1935, sold to S. O. Connally, one of its employees, a current model of a Chevrolet coach. The down payment was $182.33 and the car was delivered to the purchaser under a conditional sales contract for the balance which exceeded five hundred dollars. Before making any further payments, the purchaser and car left Tennessee for parts unknown, and, in February, 1936, the State Road Commission of West Virginia issued a certificate of title covering the car to Connally, which disclosed no lien. In the same month, the Johnston Motor Company acquired possession of the car pursuant to a trade with Connally, and after that company had sold and repossessed it, on the twentieth day of February, 1937,

the plaintiff, C. C. Richardson, who was employed by the Virginian Railway Company at Princeton, purchased the car from the Johnston Motor Company under a conditional sales contract duly filed in Mercer County.

The B. & B. Chevrolet Company having been required to repurchase the conditional sales contract from General Motors Acceptance Corporation, received a letter from an informer in Washington, D. C., stating, in effect, that the location of the Connally car was known to him and that for the sum of seventy-five dollars he would undertake to return it to the B. & B. Company at Knoxville. That company, evidently without making further inquiry, did no more than to assume the responsibility of paying seventy-five dollars if and when the car should be delivered to it in Knoxville, and to authorize the informer to represent it as its employee for that purpose. Whether it was expected that the informer could, in a lawful manner, regain possession of the automobile without violence and without instituting a proceeding for that purpose, we do not know.

On the fifth day of the following August, Richardson drove the car near his working place in Princeton and parked it on the public street, leaving it locked. The informer, representing the B. & B. Chevrolet Company, discovered the car, pried the lock and, without making known his purpose, drove it back to Knoxville and turned it over to the original vendor.

The declaration was filed at August Rules, 1938, process was returned executed and, the defendant not appearing, at September Rules a conditional judgment was confirmed and a writ of inquiry ordered. At the ensuing term, without a plea being entered on behalf of the defendant, the case was submitted to the presiding judge as stated, an order to that effect having been entered. On a later day of the same term, a judgment of *nil capiat* was entered, and upon the petition of the plaintiff below, this writ was awarded.

It would seem that strictly adhering to our established practice, an office judgment becomes final upon the sub-

mission of an action under a writ of inquiry. For a general discussion, see Kittle, The Law of Rule Days 54; Burks Pleading & Practice (3d Ed.), sec. 49; *Peters* v. *Hajacos,* 91 W. Va. 88, 112 S. E. 233. But see also, Code, 56-4-51, noting the requirement that plaintiff prove his case upon such submission. The only thing that the inquiry logically should cover is the question of damages, the inquiry relating to nothing more than the amount of the recovery to which the plaintiff under the existing record is already entitled. However, this action having been submitted to the court in lieu of a jury by agreement in writing which, though it contains no express denial of liability, was intended to operate as involving the right to recover and was so treated by all concerned, and there being no question raised in this or the trial court which involves procedure, we shall treat any questions of that sort as having been waived.

As shown by this record the trial judge gave no reason for his finding and there being no pleading save the notice, we shall deal with the sole question submitted by the briefs which is whether the repossession came within the terms of the policy as having been a "theft".

We wish to emphasize the fact that the question of whether the method that was used to repossess the car was justified or is to be approved is not here involved. If it were we should emphatically disapprove that method. The sole question here, however, is whether the plaintiff's loss is covered by the terms of the policy so that the insurance company, the only defendant now before the court, is responsible.

There is no question raised in this record as to the binding effect of the unrecorded conditional sales contract in Tennessee, consequently its binding validity is assumed.

The Tennessee conditional sales contract being valid and enforceable, of course, it is to be fully recognized in West Virginia. Code, 40-3-5, requires the filing of a conditional sales contract within ten days from the date of sale, otherwise to be void as to purchasers without notice, not including creditors, but, of course, does not affect a sale not taking place in this State.

Code, 40-3-14, provides that after the seller has received notice that the subject matter of a conditional sales contract has been removed from the county in which the contract has been filed for record and carried into another, or from another state to West Virginia, the contract shall be void as to purchasers and creditors unless the contract is recorded within ten days.

For obvious reasons, the B. & B. Chevrolet Company was not told by the Washington informer where the car was located, and did not receive that information until the car was delivered to it at Knoxville, when, simultaneously, the promised seventy-five dollars was paid. Therefore, it is difficult to see how the duty to have their conditional sales contract recorded in Mercer County evolved upon them, because Code, 40-3-14, by very clear implication, recognizes that an unrecorded sales contract is valid as to purchasers without notice for an interval of ten days, which does not commence to run until the seller receives notice of the removal which did not occur, in any event, until the time they employed the informer, the car having been returned to them in Knoxville within ten days thereafter.

Code, 17-19-4, makes it a felony, punishable by a maximum of ten years imprisonment and a five-thousand-dollar fine to take without the knowledge and consent of the owner and to operate upon a public road or highway an automobile or other motor vehicle owned by another with the intent to deprive the owner or person in lawful charge thereof, either temporarily or permanently, of its possession or use. The distinction between the statutory offense and larceny or theft, we think, is obvious. At the same time Code, 40-3-16, accords to the seller under a conditional sales contract the right to retake the goods (car) by legal process unless the goods can be retaken without a breach of the peace. We see no manner in which the conclusion may be avoided that the informer who took possession of this car at Princeton was representing the original seller at that time, and therefore he had a right to the possession of the car even though to take control of it a locked door

had to be pried open, that conduct, although reprehensible, under the circumstances, not being a breach of the peace.

Code, 40-3-18, requires the seller under a conditional sales contract, in the event the car is repossessed without notice, to retain the car for ten days within the state where taken. The provisions of this section were not complied with, but they cannot be regarded as retroactive, and, if not, they can have no effect upon this rather questionable repossession. While the case of *Auto Sales Co.* v. *Yost,* 91 W. Va. 493, 113 S. E. 758, applied to a chattel mortgage, it recognized the right of the seller under the uniform conditional sales act to repossess under a paper not filed for record within the statutory period if that period had not expired at the time of repossession, and that the validity of such a repossession would be upheld even though the chattel mortgage had not been filed for record after the repossession. It would seem that this case inferentially holds that the filing for record of a chattel mortgage or a conditional sales contract within the time allowed by the statute and prior to a repossession causes the filing to relate back and to be treated as notice to purchasers within the statutory period. However, under the *Yost* case, it is not necessary to have either contract filed for record following a lawful repossession in order to have its provisions relate back in order to justify such repossession.

The defendant in error urges that the policy provision to the effect that the insurer shall not be liable for loss or damage to the property insured by the policy while subject to any lien, mortgage or other encumbrance not specifically set forth in the policy, should defeat the right of recovery due to the fact that the conditional sales contract that caused the plaintiff's loss was not set forth in the insurance policy under which recovery is sought. We are inclined to think that, properly raised, this might be a controlling factor, but that here it may not be considered. Code, 56-4-21, provides that where a recovery is sought upon an insurance policy in an action of covenant, debt or assumpsit and the defendant defends upon the breach

or non-compliance with the terms of the policy, the defendant shall file written specifications of defense pointing out the policy provisions relied upon. That was not done in this instance, so that we think the question does not arise upon the record now before us.

Being of the opinion that the insured's loss of the insured property was not due to theft under the law of this state, the policy being a West Virginia contract, and perceiving no apparent error in the record, the judgment of the Circuit Court of Mercer County is affirmed.

*Affirmed.*